## Georgia Darviris & another[1] *vs.* James G. Petros.

No. 00-P-1678.

Middlesex. November 14, 2002. - September 18, 2003.

Present: Greenberg, Beck, & Mills, JJ.

Further appellate review granted, 440 Mass. 1108 (2003).

*Practice, Civil,* Summary judgment. *Limitations, Statute of. Medical Malpractice,* Consent to medical treatment. *Negligence,* Medical malpractice. *Consumer Protection Act,* Unfair or deceptive act, Trade or commerce.

In an action alleging that a doctor was negligent for failing to obtain informed consent from a patient on whom he performed a different surgery from that which she had authorized, a Superior Court judge properly ruled that the patient's claims were barred by the statute of limitations, where she filed suit three years after a subsequent surgical procedure to address complications from the prior unconsented-to surgery, and where she learned, while still in the recovery room following the first surgery, that the defendant had performed a procedure for which she had not given permission. [326-327]

In a medical malpractice case, this court concluded that even assuming negligence in a doctor's failure to obtain informed consent from a patient for the surgical procedure performed, there was no support for the argument that the doctor's act was unfair or deceptive for purposes of G. L. c. 93A; further, a violation of the patient's bill of rights, G. L. c. 111, § 70E, did not constitute a per se violation of G. L. c. 93A. [327-331]

Civil action commenced in the Superior Court Department on March 8, 1999.

The case was heard by *Leila R. Kern,* J., on a motion for summary judgment.

*Herbert D. Friedman (Herbert Abrams* with him) for the plaintiffs.

*Claudia A. Hunter* for the defendant.

Beck, J. The plaintiff patient, Georgia Darviris, and her

---

[1] Nicholas P. Darviris, her husband. For convenience we refer to Georgia Darviris as the plaintiff in this opinion.

husband appeal from a Superior Court judgment of dismissal following allowance of the defendant's summary judgment motion. The defendant is James G. Petros, M.D., the plaintiff's doctor. Of the six counts in the plaintiff's complaint, the judge held that five were barred by the statute of limitations. As to the sixth, alleging violation of G. L. c. 93A, the judge concluded that there was "no support for the argument that [the doctor's] act was unfair or deceptive." We affirm the judgment.

*Factual background.* In reviewing a judge's action on a motion for summary judgment, we consider the facts in the light most favorable to the nonmoving party. See *Miller* v. *Mooney*, 431 Mass. 57, 60 (2000). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Riley* v. *Presnell*, 409 Mass. 239, 244 (1991). The facts most favorable to the plaintiff are as follows.

After consulting the defendant initially in 1992 for rectal bleeding and pain, the plaintiff sought his care again on December 14, 1995, for the same symptoms. The defendant examined her, told her that "it was the [anal] fissure again," and recommended surgery. The plaintiff asked the defendant about side effects. He reassured her that she wouldn't have any because of her relative youth. She asked about treatment of side effects if they should occur. He said that at worst there was a simple procedure he could do in his office. They also discussed how long the surgery would take. The operation was scheduled for January 10, 1996.

Sometime before the surgery the plaintiff telephoned the defendant to tell him that her symptoms had disappeared and that she had no pain or bleeding. She asked whether they should cancel the scheduled surgery. The defendant responded that she needed the surgery to "take care of this problem once and for all."

On January 4, 1996, six days before surgery, the plaintiff went for a preoperative evaluation at the hospital where the surgery was to be performed. While there she signed an eight-section form captioned "A Consent to an Operation." A woman

sitting at a desk, who may have been a doctor, told her that the form was part of the procedure and that she needed to sign the consent form to allow Dr. Petros to perform the operation on her. The plaintiff signed the form without reading it.

The first section of the form authorized a "fissurectomy" under the direction of the defendant. Section two provided that the "[t]he nature and purpose of the operation . . . and the possible alternative methods of treatment [had] been explained to [her] by Dr. Helo." The third section concerned the opportunity to ask questions. The fourth was a consent "to the performance of operations, procedures, and treatment in addition to or different from those [then] contemplated . . . which the above-named doctor . . . may . . . consider necessary or advisable." Above the plaintiff's signature, near the bottom of the page, the form stated in capital letters, "I certify that I have read and fully understand the above consent, that the explanations . . . referred to were made, that all blanks or statements requiring insertion or completion were filled in, and that inapplicable paragraphs, if any, were stricken before I signed." At the bottom of the page, the "signature of witness" appears to be "GHelo." However, the plaintiff testified at deposition that she did not meet Dr. Helo until the morning of the surgery and that Dr. Helo was not the person who gave her the consent form to sign on January 4.

The plaintiff had requested spinal anesthesia for the surgery so that she would be awake. During surgery she heard the defendant say to others in attendance, "Look at how nicely it healed itself." In the recovery room, the defendant told the plaintiff that he had performed a hemorrhoidectomy rather than a fissurectomy. The plaintiff was very upset. She told the defendant she never would have agreed to that procedure because her godfather had had a very bad experience with it.

After the surgery the plaintiff was in terrible pain, which she attributed to the hemorrhoidectomy. She felt as though there was an open wound. The plaintiff visited the defendant weekly for follow-up treatment; the defendant consistently reassured her, telling her that she was getting better. On March 9, 1996, the plaintiff was in agony. She understood that the pain she was experiencing was the result of the hemorrhoidectomy. The next day, the defendant performed a second surgery on her. At that

time, the defendant determined that one of the hemorrhoidectomy wounds had not healed. An opinion letter from an expert stated that the plaintiff's symptoms, as documented in her medical records, were known side effects or complications of the surgery performed on January 10 and "were proximally caused by the excisional hemorrhoidectomy performed upon her on [that day]." The plaintiff saw the defendant three times at weekly intervals following the second surgery, after which it appears she obtained her medical care elsewhere.

*The complaint and the judge's decision.* According to the docket sheet, the plaintiff filed her complaint against the defendant on March 8, 1999, three years after the second surgery. She filed a six-count amended complaint on June 7, 1999. The first three counts alleged different theories for the defendant's failure to obtain the plaintiff's consent for a hemorrhoidectomy — simple battery, failure of informed consent, and violation of G. L. c. 111, § 70E, the so-called patient's bill of rights. See *Commonwealth* v. *Dube*, 413 Mass. 570, 572 (1992). There were also claims for negligent infliction of emotional distress, loss of consortium (the husband's sole claim), and violation of G. L. c. 93A.

The judge ruled that all of the claims, aside from the c. 93A count, were barred by the three-year statute of limitations period set out in G. L. c. 260, § 4. As for the c. 93A claim, she determined that even assuming the defendant was negligent in failing to obtain informed consent, which the defendant denied, an unfair and deceptive act under c. 93A required a showing of more than negligence. Finding no such showing, the judge allowed summary judgment on that claim as well.

*Statute of limitations.* In his answer to the plaintiff's amended complaint, the defendant contended that the "action [was] not brought within the time specified by the General Laws of this Commonwealth." "Once the defendant pleads the statute of limitations as a defense to a malpractice action and establishes that the action was brought more than three years from the date of the injury, the burden of proving facts that take the case outside the impact of the statute falls to the plaintiff." *Riley* v. *Presnell*, 409 Mass. 239, 243-244 (1991).

The plaintiff did not carry her burden. She does not dispute

that while she was still in the recovery room, she learned that the defendant had performed surgery for which she had not given permission. In the days and weeks following the unconsented-to surgery, she experienced painful and unpleasant side effects which she consistently ascribed to the surgery. On appeal she argues that although she knew on January 10, 1996, that she did not give her consent to the surgery, she did not know that the procedure itself had caused her harm until the second surgery was required. She claims that prior to that time she thought her symptoms were "within the bounds of the possible outcomes of the [anticipated] fissurectomy."

"Massachusetts does not require discovery of each of the elements of the cause of action — duty, breach, causation, and damages before the limitation clock in G. L. c. 260, § 4 starts ticking." *Malapanis* v. *Shirazi*, 21 Mass. App. Ct. 378, 382 (1986). "A plaintiff who invokes the discovery rule by claiming that her delay in filing suit stems from a failure to recognize the cause of her injuries bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge." *Doe* v. *Creighton*, 439 Mass. 281, 283 (2003).

In this case, the plaintiff's complaint for failure to obtain informed consent, assuming materiality, see *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. 152, 155-156 (1982); *Aceto* v. *Dougherty*, 415 Mass. 654, 661 (1993), accrued almost immediately. The plaintiff knew that she had been subjected to surgery she did not authorize; indeed, she insists she would not have authorized it because of her godfather's bad experience. She therefore also knew, or should have known, that she was not informed of the potential complications of the surgery. Moreover, according to her deposition, she consistently ascribed her suffering to the surgery. The judge did not err in allowing the defendant's motion for summary judgment on these claims.

*The c. 93A claim.* In ruling on the plaintiff's c. 93A claim, for which the four-year statute of limitations had not expired, see G. L. c. 260, § 5A, the judge, citing *Meyer* v. *Wagner*, 429 Mass. 410, 424 (1999), held that even assuming negligence in the failure to obtain informed consent, more than negligence was required to support a c. 93A claim. She therefore concluded that

there was "no support for the argument that [the defendant's] act was unfair or deceptive," referring in a footnote to section four of the consent form that the plaintiff signed.

On appeal, the plaintiff argues that c. 93A "applies to all acts of unfair and deceptive trade practices, including those that arise in the context of a patient-physician relationship," citing *Little* v. *Rosenthal*, 376 Mass. 573, 577 (1978), and *Riley* v. *Presnell*, 409 Mass. at 243. She further contends that "[t]he fact that a negligence theory is asserted does not bar a c. 93A claim, as it has been applied to cases involving negligent misrepresentation of facts." She also asserts that the defendant's violation of G. L. c. 111, § 70E, constitutes a per se violation of c. 93A, through the operation of the Attorney General's regulation at 940 Code Mass. Regs. § 3.16(3) (1993). Finally she claims that the defendant's "actions and omissions, if proven at trial, suggest unfair or deceptive acts rather than simple negligence," and therefore warrant recovery under c. 93A. We disagree.

Chapter 93A was enacted in 1967 to provide a remedy for "unfair or deceptive acts or practices in the conduct of any trade or commerce." G. L. c. 93A, § 2(*a*). However, "[t]here is no clear definition of what conduct constitutes an 'unfair or deceptive' act." *Ahern* v. *Scholz*, 85 F.3d 774, 798 (1st Cir. 1996). It depends on the facts and circumstances of each case. See *Arthur D. Little, Inc.* v. *Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998).

"Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, . . . the boundaries of what may qualify for consideration as a c. 93A violation is a question of law." *Shepard's Pharmacy, Inc.* v. *Stop & Shop Cos.*, 37 Mass. App. Ct. 516, 520 (1994), quoting from *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 414 (1991), *S.C.*, 412 Mass. 703 (1992). Upon review, we conclude that the plaintiff has not shown that the facts of her case, viewed in the light most favorable to her, take her claim out of the realm of negligent failure to obtain a patient's informed consent for a particular surgical procedure, see *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. at 154-155, and into the arena of c. 93A. The essence of the plaintiff's complaint is that she agreed to a fissurectomy but that once she

was in the operating room the defendant performed a different operation to which she had not consented. Perhaps the defendant was casual in attending to his patient's preferences, and may therefore have been negligent. But his conduct was not unfair or deceptive, at least on the record before us, particularly where the plaintiff admits she signed a consent form, without reading it, six days before the surgery. See *O'Leary* v. *Nepomuceno*, 44 Mass. App. Ct. 683, 685 (1998) (plaintiff's signing of consent form indicating he was fully informed of risks of and options to surgery was appropriate factor in medical malpractice tribunal's conclusion that plaintiff failed to raise a legitimate question of liability).

The plaintiff cites *Little* v. *Rosenthal*, 376 Mass. at 577, and *Riley* v. *Presnell*, 409 Mass. at 243, in support of her c. 93A action. However, neither of these cases stands explicitly for the proposition that medical malpractice actions may be brought under c. 93A. In *Little* v. *Rosenthal, supra,* the court held that a c. 93A case alleging medical malpractice was subject to the jurisdiction of a medical malpractice tribunal pursuant to G. L. c. 231, § 60B, without directly confronting whether the underlying action would lie. In *Riley* v. *Presnell, supra,* c. 93A was mentioned only on the issue of the statute of limitations.

Two recent legal malpractice cases are relevant. Both cases concern claims under c. 93A where there was sufficient evidence to prove underlying negligence. In *Meyer* v. *Wagner*, 429 Mass. at 424, on which the motion judge here relied, the Supreme Judicial Court described as "correct" a Superior Court trial judge's ruling that "[a]n unfair or deceptive act requires more than a finding of negligence," and affirmed that judge's decision rejecting a c. 93A claim. (The overwhelming weight of trial evidence in that case dealt with allegations of negligence. *Ibid.*)

In *Poly* v. *Moylan*, 423 Mass. 141, 151 (1996), cert. denied, 519 U.S. 1114 (1997), the court affirmed a Superior Court holding that the lawyer's negligence did not result in a deceptive act: "at no time did the [lawyer] deceive [his client]. . . . [A]lthough the defendant was negligent, he did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation." See *Squeri* v. *McCarrick*, 32 Mass. App. Ct. 203, 207 (1992) ("A negligent act standing by itself does not

give rise to a claim under c. 93A. There must in addition be evidence that the negligence was or resulted in an unfair or deceptive act or practice").

The plaintiff argues that she has a valid c. 93A claim pursuant to 940 Code Mass. Regs. § 3.16(3) even if the defendant's conduct was no more than negligent. The regulation, promulgated by the Attorney General pursuant to G. L. c. 93A, § 2(*c*), provides that "an act or practice is a violation of [G. L. c. 93A, § 2,] if . . . (3) [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare . . . ." 940 Code Mass. Regs. § 3.16 (1993). According to the plaintiff, the patient's bill of rights, G. L. c. 111, § 70E (applicable to facilities licensed by the Department of Public Health), is such a statute. It provides, inter alia, that "[e]very patient . . . shall be provided by [her] physician . . . the right: (*a*) to informed consent to the extent provided by law." Putting these two provisions together, the plaintiff argues that the defendant's violation of c. 111 is a per se violation of c. 93A. We disagree.

The Attorney General's regulation was promulgated before the enactment of the patient's bill of rights. See *Piccuirro* v. *Gaitenby*, 20 Mass. App. Ct. 286, 291 & n.7 (1985) (indicating existence of regulation at least as early as 1975); St. 1979, c. 214 (enacting patient's bill of rights). The patient's bill of rights provides that any person whose rights under the bill are violated may bring a malpractice action pursuant to G. L. c. 231, §§ 60B-60E, "in addition to any other action allowed by law or regulation." G. L. c. 111, § 70E. On the other hand, G. L. c. 111, § 70F, regarding, inter alia, informed consent for HTLV-III testing, enacted by St. 1986, c. 241, explicitly states that "[w]hoever violates the provisions of [§ 70F] shall be deemed to have violated [G. L. c. 93A, § 2]." The Legislature's specificity in drafting § 70F suggests to us that while a violation of c. 111, § 70E, may constitute a violation of c. 93A as well, a § 70E violation is not a per se violation of c. 93A. Our interpretation is consistent with the case law. See *Billingham* v. *Dornemann*, 55 Mass. App. Ct. 166, 176 (2002) ("whether an act or practice violates a statute or rule promulgated under G. L. c. 93A, § 2, is but one of several factors to be applied to all the circumstances

of the transaction"). See also *Reiter Oldsmobile, Inc.* v. *General Motors Corp.*, 378 Mass. 707, 710-711 (1979) (not every unlawful act is unfair or deceptive); *Framingham Auto Sales, Inc.* v. *Workers' Credit Union*, 41 Mass. App. Ct. 416, 418 (1996) ("a mere breach of a legal obligation under commercial law, without more, does not amount to an unfair or deceptive act under G. L. c. 93A").

We therefore conclude that there was no error in the decision of the Superior Court judge in this case. While the doctor may have been negligent for failing to obtain informed consent, there was insufficient evidence that he committed an unfair or deceptive act or practice. The judge's ruling on the expiration of the statute of limitations as to the other claims was also correct.

*Judgment affirmed.*