Isabella SWENSON, et al., Plaintiffs,

v.

YELLOW TRANSPORTATION, INC., et al., Defendants.

No. CIV.A.02–124820JGD.

United States District Court, D. Massachusetts.

April 12, 2004.

**52**

Joseph J. Wadland, Lawrence J. Mullen, Wadland & Ackerman, Andover, MA, for Eric Swenson, Isabella Swenson, Magi Ramy–Swenson, Plaintiffs.

Anthony M. Campo, Mark William Shaughnessy, Brian F. Breen, Boyle, Morrissey & Campo, P.C., Boston, MA, for Yellow Freight Systems, Inc., Yellow Transportation, Inc., George Thing, Defendants.

### MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT VII [1]

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

This matter is before the court on the "Motion of Defendants, Yellow Transportation, Inc. and Yellow Freight System, Inc., for Summary Judgment on Count VII Pursuant to Fed.R.Civ.P. 56(c)" (Docket # 18). By this motion, the defendants Yellow Transportation, Inc. and Yellow Freight System, Inc. (collectively "Yellow") challenge the applicability of Mass. Gen. Laws ch. 93A to this suit, which involves a serious motor vehicle accident between a driver employed by Yellow, George Thing ("Thing"), and a car driven by the plaintiff Magi Ramy–Swenson. For the reasons

---

**1.** The parties consented to transfer the case to this court for all purposes, including trial and the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

detailed herein, the defendants' Motion is ALLOWED.

## II. *STATEMENT OF FACTS*

This suit arises out of a November 26, 2001 crash between a tractor-trailer being driven by the defendant Thing and a car being driven by the plaintiff Magi Ramy–Swenson on Route I–495 northbound in Andover, Massachusetts. At the time of the accident, Thing was employed by Yellow and was driving the tractor-trailer within the scope of his employment. Magi Ramy–Swenson was nine months pregnant at the time of the crash. Her daughter, the plaintiff Isabella Swenson, was later born severely handicapped, allegedly as a result of injuries sustained during the accident.

Magi Ramy–Swenson, her husband Eric Swenson, and their daughter Isabella, brought suit alleging claims of negligence against Thing (Count I), respondeat superior/vicarious liability against Yellow Freight and Yellow Transportation (Count II), and negligence under various theories against both Yellow Freight and Yellow Transportation (Counts III—V). In addition, plaintiffs Eric Swenson and Magi Ramy–Swenson, as the parents of Isabella, brought a loss of consortium claim against all the defendants (Count VI). Finally, in Count VII, the plaintiffs contend that Yellow Freight and Yellow Transportation violated Mass. Gen. Laws ch. 93A, § 2. It is this Count which is at issue in the instant motion.

Plaintiffs contend that Thing was driving at an excessive rate of speed, and that this speed was a "substantial contributing cause" of the accident. *See* Plaintiffs' Opposition to the Motion for Summary Judgment (Docket # 21) (hereinafter "Opposition") at 4. According to the plaintiffs, timeliness of deliveries was important to Yellow, and Yellow set expected completion times for deliveries that were too short. *Id.* at 5. As a result of such expectations, "Thing's route was 'like a rat race' and there was 'time pressure' on him to complete his route." *Id.* Further, according to the plaintiffs, such conduct on the part of Yellow violated 49 C.F.R. § 392.6 of the Federal Motor Carrier Safety Regulations, which provides in relevant part that:

> No motor carrier shall require or permit . . . the operation of any commercial motor vehicle between points in such period of time as would necessitate the commercial motor vehicle being operated at speeds greater than those prescribed by the jurisdictions in or through which the commercial vehicle is being operated.

Thus, the evidence, "[w]hen viewed in the light most favorable to plaintiffs," according to the plaintiffs:

> demonstrates that Yellow, in violation of 49 C.F.R. § 392.6, directed, encouraged or required Thing to operate its commercial truck in Massachusetts at speeds greater than those prescribed by Massachusetts statute for its financial gain and in utter disregard for the safety of travelers on Massachusetts roadways. This evidence also shows that Yellow undertook to impose unreasonable safety risks on the public traveling near its trucks on Massachusetts roadways, persons who have no reasonable alternative but to use these roadways and who do so unaware of Yellow's practice in this regard.

Opposition at 6. Such conduct, according to the plaintiffs, also violated Mass. Gen. Laws ch. 90, § 17, which makes it unlawful to operate a motor vehicle at an excessive rate of speed. *See* Opposition at 12. It is the plaintiffs' contention that this conduct by Yellow constituted an unfair and deceptive act or practice in trade or commerce in violation of ch. 93A. The defendants raise various arguments in support of their

motion for summary judgment, including, *inter alia,* that the plaintiffs have failed to state a claim since they cannot establish either that the conduct constituted "unfair or deceptive practices" under ch. 93A, or that such conduct arose out of Yellow's conduct in trade or commerce with the plaintiffs. For the reasons detailed herein, this court agrees with the defendants and, thus, Count VII is dismissed.

Additional facts will be discussed below as needed.

### III.  ANALYSIS

#### A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In connection with the instant motion, the facts will be viewed in the light most favorable to the plaintiffs. *See Rosenberg v. City of Everett,* 328 F.3d 12, 17 (1st Cir.2003). Nevertheless, this court concludes that, as a matter of law, such facts fail to state a claim and that Yellow is entitled to summary judgment on Count VII of the complaint.

#### B.  Unfair and Deceptive Act or Practice

■ Mass. Gen. Laws ch. 93A, § 2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." In addition, Mass. Gen. Laws. ch. 93A, § 9 "creates a cause of action in favor of plaintiffs who are injured as a result of an unfair or deceptive act or practice." *Lord v. Commercial Union Ins. Co.,* 60 Mass. App.Ct. 309, 322, 801 N.E.2d 303, 314, *review denied,* 441 Mass. 1104, 805 N.E.2d 45 (2004). In order to prevail on a claim

under ch. 93A, "a plaintiff must establish both that an unfair or deceptive act or practice has been committed *and* that the commission of that act or practice has caused him an injury. The plaintiff must show that there was a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *Id.* at 317, 801 N.E.2d at 311 (emphasis in original).

■ The statute does not define "unfair or deceptive" conduct; rather, it "depends on the facts and circumstances of each case." *Darviris v. Petros,* 59 Mass. App.Ct. 323, 328, 795 N.E.2d 1196, 1200, *review granted,* 440 Mass. 1108, 801 N.E.2d 802 (2003). Nevertheless, it is up to the court, as a matter of law, to determine "the boundaries of what may qualify for consideration as a c. 93A violation[.]" *Id.* (quoting *Shepard's Pharmacy, Inc. v. Stop & Shop Cos.,* 37 Mass.App.Ct. 516, 520, 640 N.E.2d 1112, 1115, *review denied,* 419 Mass. 1102, 644 N.E.2d 226 (1994)) (additional citations omitted). Certain principles are well-established, however. For example, mere negligence is insufficient to state a claim under ch. 93A. *See Darviris v. Petros,* 59 Mass.App.Ct. at 329, 795 N.E.2d at 1201, and cases cited. Moreover, as a general statement, whether something constitutes an unfair or deceptive business practice "is determined from all the circumstances .... A practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted." *Duclersaint v. Fed. Nat'l Mortgage Ass'n,* 427 Mass. 809, 814, 696 N.E.2d 536, 540 (1998) (internal citations omitted). In the instant case, the facts do not support the conclusion that Yellow committed an unfair or deceptive act or practice, much less engaged in conduct which could be found to have caused the plaintiffs to alter their conduct.

■ Despite the serious injuries sustained, this case involves a straight-forward motor vehicle accident where, according to the plaintiffs, the speed of the defendant driver is a critical issue. "There was simply nothing unfair or deceptive about that accident. It was a negligent act and no more." *Dow v. Lifeline Ambulance Service, Inc.*, No. 924829, 1996 WL 1186916, at *1 (Mass.Super. July 3, 1996). While 93A is a statute of "broad impact," it was not intended "to augment every other legal or equitable remedy available to parties injured in automobile accidents." *Id.* at *2. Yellow's conduct of placing unrealistic demands on its drivers was not unfair or deceptive—while it may have been negligent, it did not rise to the level of "conduct involving dishonesty, fraud, deceit or misrepresentation" so as to support a violation of ch. 93A. *Darviris v. Petros*, 59 Mass.App.Ct. at 329, 795 N.E.2d at 1201 (doctor's negligent failure to obtain a patient's informed consent for a particular surgical procedure did not state a claim under ch. 93A as it was not unfair or deceptive conduct) (quoting *Squeri v. McCarrick*, 32 Mass.App.Ct. 203, 207, 588 N.E.2d 22, 25 (1992)). *Accord Poly v. Moylan*, 423 Mass. 141, 151, 667 N.E.2d 250, 257 (1996) (attorney malpractice may have constituted negligence, but did not rise to the level of an unfair or deceptive act or practice), *cert denied*, 519 U.S. 1114, 117 S.Ct. 956, 136 L.Ed.2d 843 (1997). Moreover, even under plaintiffs' version of the events, while Yellow may have been aggressive and may have pushed its drivers, there is no evidence that such conduct was unfair or improperly coercive toward either the drivers or other motorists. *See Shepard's Pharmacy, Inc. v. Stop & Shop Cos., Inc.*, 37 Mass.App.Ct. at 521–22, 640 N.E.2d at 1115–16 (while defendant engaged in pressured negotiations, its conduct did not have "an extortionate quality that gives … the rancid flavor of unfairness") (quoting *Atkinson v. Rosenthal*, 33 Mass.App.Ct. 219, 226, 598 N.E.2d 666, 670 (1992)).[2]

Plaintiffs argue further that because Yellow's conduct allegedly violated the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 392.6 (quoted above), and Mass. Gen. Laws. ch. 90, § 17 which makes speeding unlawful, its conduct should be considered unfair under the provisions of ch. 93A. *See* Opposition at 12–13. Specifically, the plaintiffs rely on 940 C.M.R. § 3.16, promulgated by the Attorney General, which provides:

Without limiting the scope of any other rule, regulation, or statute, an act or practice is a violation of M.G.L. c. 93A § 2 if: ....

(3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection....

However, despite the language of this regulation, the case law is clear that a statutory violation is not a *per se* violation of ch. 93A. *See Darviris v. Petros*, 59 Mass.App. Ct. at 330–31, 795 N.E.2d at 1201, and cases cited. As Judge Cowin ruled in *Dow v. Lifeline Ambulance Serv., Inc.*:

Were the Court to accept the plaintiffs' argument that the violation of any Massachusetts statute or regulation automatically constitutes a violation of chapter 93A under Attorney General's regulations at 904 Code Mass. Regs.

---

**2.** In view of this court's conclusion that the defendants' conduct did not rise to the level of an unfair or deceptive act or practice, the question of whether the plaintiffs have established a causal connection between the unfair and deceptive conduct and plaintiffs' injuries will not be addressed.

§ 3.16(3), chapter 93A would . immediately become the preeminent law of the Commonwealth, replacing all other forms of civil liability. The advantage provided by the option of double or treble damages and awards of attorneys fees granted successful consumer plaintiffs in business situations would be granted to all plaintiffs in all situations. Without clearer indication from the Legislature that this result is desirable and just, the Court cannot engage in such a radical rewriting of Massachusetts jurisprudence.

1996 WL 1186916, at *2 (Mass.Super.1996).

Moreover, the Attorney General's regulation speaks in terms of the protection of "consumers." This is consistent with the purpose of ch. 93A, which is "to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace." *Poznik v. Mass. Medical Prof. Ins. Assoc.*, 417 Mass. 48, 53, 628 N.E.2d 1, 4 (1994). Assuming, *arguendo*, that Yellow violated Mass. Gen. Laws ch. 90, § 17 and/or 49 C.F.R. § 392.6, these statutes are not directed to the protection of consumers.[3] Thus, the argument that the violation of these statutes constitutes a *per se* unfair or deceptive act or practice must fail.

Furthermore, even considering the alleged statutory violations as "one of several factors to be applied to all the circumstances of the transaction" to determine whether the conduct violates ch. 93A, *see Billingham v. Dornemann*, 55 Mass.App. Ct. 166, 176, 771 N.E.2d 166, 174 (2002), and cases cited, this court concludes that the plaintiffs still have failed to allege any unfair or deceptive act or practice. Therefore, this claim shall be dismissed.

### C. *Trade or Commerce*

■ Plaintiffs' claim under ch. 93A fails for the additional reason that the conduct complained of was not undertaken in a business context or as part of a business transaction between Yellow (or Thing) and the plaintiffs. Thus, while Yellow, as a business, is itself engaged in trade or commerce, it did not have any commercial dealings involving the plaintiffs and, therefore, ch. 93A is inapplicable.

■ It is well-established that "the proscription in § 2 of 'unfair or deceptive acts or practices . . .' must be read to apply to those acts or practices which are perpetrated in a *business context*." *Poznik v. Mass. Med. Prof'l Ins. Assoc.*, 417 Mass. at 52, 628 N.E.2d at 3 (internal citation omitted, emphasis in original). Thus, ch. 93A "is intended to protect against unfair and deceptive practices in trade, not unfair practices in general. Apart from claims of unfair competition, a plaintiff must allege some sort of transaction between the parties for liability to attach under sections two and eleven." *L.B. Corp. v. Schweitzer–Mauduit Intern., Inc.*, 121 F.Supp.2d 147, 152 (D.Mass.2000) (summary judgment granted on ch. 93A claim where there was no business relationship between the parties), and cases cited. *Accord Miller v. Mooney*, 431 Mass. 57, 64–65, 725 N.E.2d 545, 551 (2000) (heirs of deceased client could not maintain a claim under ch. 93A[4] against decedent's attor-

---

3. While, as detailed *infra*, the plaintiffs correctly assert that relief under ch. 93A is not limited to consumers, the Attorney General's regulation is expressly limited to rules and regulations "intended to provide the *consumers* of this Commonwealth protection." 940 C.M.R. § 3.16(3) (emphasis added).

4. Although not specified in the decision, because the heirs were not businesses, the claim must have been brought under ch. 93A, §§ 2 and 9, the provision at issue in the instant case. *See Kerlinsky v. Fidelity Deposit Co. of Md.*, 690 F.Supp. 1112, 1117 (D.Mass.1987), *aff'd* (without op.), 843 F.2d 1383 (1st Cir. 1988).

ney as "[t]he defendant was not engaged in trade or commerce *with the plaintiffs* within the meaning of G.L. c. 93A.") (emphasis added). In the instant case, there was no relationship between the plaintiffs and the defendants at all prior to the accident, thus it is axiomatic that the alleged wrongful conduct did not arise in a business context between them (or even between Yellow and any other travelers on the road). Therefore, the claim under ch. 93A fails.

Plaintiffs rely virtually exclusively on *Maillet v. ATF–Davidson Co., Inc.*, 407 Mass. 185, 552 N.E.2d 95 (1990), to support their claim. *See* Opposition at 8 –10. *Maillet* makes it clear that one does not have to be a consumer or in privity with the defendant in order to recover under ch. 93A, § 9. *Maillet v. ATF–Davidson Co., Inc.*, 407 Mass. at 191, 552 N.E.2d at 99. Nevertheless, the case did not eliminate the requirement that the wrongful conduct must arise in a business context. To the contrary, it was the existence of the commercial relationship which enabled the claim to proceed. *Id.* at 191 n. 9, 552 N.E.2d at 99 n. 9.

Thus, in *Maillet* the plaintiff was injured when his hand got caught in a printing press while he was at work. A jury found that the defendant manufacturer of the press had violated the warranty of merchantability by failing to warn of a dangerous condition. *Id.* at 189, 552 N.E.2d at 98. The court expressly noted that it was the existence of a business transaction, namely the sale to the plaintiff's employer, which had created the warranty, and distinguished the situation from one in which no transaction, such as a sale, lease or contract, had taken place. *Id.* at 191 n. 9, 552 N.E.2d at 99 n. 9. Moreover, although not expressly addressed by the *Maillet* court, it is significant to recognize that the case proceeded under a failure to warn theory, meaning that, because of who they

were, the defendant's duty to warn ran to the plaintiff. In the instant case, there was no relationship at all between Yellow (or Thing) and the plaintiffs, and the wrongful conduct complained of, *i.e.* pressuring the drivers, was not directed to the plaintiffs or other travelers on the roads. Finally, the *Maillet* court relied on the directive in ch. 93A, § 2 that the court "be guided by the interpretations given by the Federal Trade Commission" to § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and noted that the "Federal Trade Commission has concluded that failure to warn of a defective or dangerous condition that could cause personal injury constitutes an 'unfair' trade practice." *Maillet v. ATF–Davidson Co., Inc.*, at 192, 552 N.E.2d at 99–100, and cases cited. Conversely, in the instant case, there is no comparable interpretation by the FTC recognizing that the violation of the statutes on which the plaintiffs rely, or the conduct about which they are complaining, would be actionable under ch. 93A.

In sum, plaintiffs' reliance on *Maillet* is misplaced. The court there did not eliminate the requirement that there be a business context for ch. 93A to be applicable. Nor did it eliminate the requirement that the challenged conduct somehow involve a relationship between the plaintiff and defendant, although the parties do not need to be in privity. While in the instant case the plaintiffs' injuries were admittedly very serious, the defendants' conduct does not give rise to a claim of unfair or deceptive acts or practices in trade or commerce.

## IV. CONCLUSION

For all the reasons detailed herein, the "Motion of Defendants, Yellow Transportation, Inc. and Yellow Freight System, Inc., for Summary Judgment on Count VII Pur-

suant to Fed.R.Civ.P. 56(c)" (Docket # 18) is ALLOWED.